IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELINDA B.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 6:19-cv-1893-MC

OPINION AND ORDER

MCSHANE, Judge:

        Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On May 16, 2016, Plaintiff filed an application for benefits, alleging disability as of January 23, 2015. Tr. 30.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 30-39. Plaintiff argues the ALJ erred in finding her less-than fully credible, in weighing the opinion of her primary care physician, and in rejecting lay witness testimony from Plaintiff's husband. Because the Commissioner's decision is not supported by substantial evidence, the Commissioner's decision is REVERSED and this matter is REMANDED for calculation of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: obesity and rheumatoid arthritis. Tr. 33. The ALJ concluded Plaintiff had the RFC to perform light work with certain additional restrictions. Tr. 34-45. Plaintiff argues the ALJ did not capture the extent of her limitations. The Court agrees.

Plaintiff alleged severe physical limitations. At the hearing before the ALJ, Plaintiff testified that as of January 2015, she could not work because "I was pretty much doubled over in pain." Tr. 56. Plaintiff could not sit or stand and started experiencing numbness:

> I have pain, the pain of it's shooting down my legs, it's, you know, just—if standing, I actually get dizzy and I start feeling like I'm going to pass out, so I have to sit. . . . I just—when it gets really bad I'm basically on the couch, like laying on my side and getting—and even in that position I'm not—I'm not ever going to be pain-free, but it's just where I can't function.

Tr. 57.

At the hearing, Plaintiff estimated her shoulder pain at a seven and her hips and pelvis a bit higher. Tr. 60. She had severe cramping and diarrhea. Tr. 60. Plaintiff described her neck pain: "I have neck pain, headaches. When I have real severe neck paint it's—I can't turn my neck, like, to look to drive," and stated her husband helped her as it took her twice as long to do anything. Tr. 61. Plaintiff could not cook because she could not stand. Tr. 61. Plaintiff stated she could not bath by herself due to vertigo. Tr. 62. Plaintiff stated that due to pain and dizziness, she was unable to stand for more than five minutes at any one time. Tr. 235. Plaintiff estimated she could walk one block before needing to stop to rest for 10 minutes. Tr. 239. Plaintiff experienced flare ups where she could not leave the house for several days. Tr. 64-65. Plaintiff stated lifting five pound is "pushing it." Tr. 65. Plaintiff's pain prevented her from bending or squatting. Tr. 65. Plaintiff could not walk far and needed somebody with her to help balance "or I end up

3 – OPINION AND ORDER

holding on to the walls just—I'm not balanced like I used to be." Tr. 66. Plaintiff could not use a laptop due to pain in her neck from looking down and had problems texting because "I have a little bit of a tremor. I get cramps from them in my hands and wrists and my wrists swell up. It's any joint is swollen and painful, pretty much." Tr. 66.

When asked why she could not perform a simple job with simple instructions, Plaintiff stated:

> The—well, pain and then my attention—well, I'm on medication, too, so I know that plays into it, but just my attention. And then when you're in pain, your focus isn't—it's hard to focus on a task at hand that would have been nothing from me three years ago. You know what I mean? So, it's just the inability to concentrate and to focus in and then the pain involved in—somebody's telling me something on the phone, I can make, you know, write it down and—but then when I—if I was to—had to do any kind of work on a compute like I used to have to do, grids and presentations, there's just no way. I'd have to have somebody else—I could talk to them and tell them what to do, but even then I don't trust my recall and my brain ability—cognitive.

Tr. 67.

Plaintiff had to take naps every day. Tr. 68. Plaintiff testified that on average, she napped for 1.5 hours at a time but could nap up to three hours at any given time. Tr. 68. Plaintiff's testimony regarding her symptoms was supported by a July 30, 2018 letter and medical source statement from Dr. Paul Johnson, Plaintiff's primary care physician. Dr. Johnson wrote:

> [Plaintiff] has continued to see me as well as a Gastroenterologist for continued bouts of acute diverticulitis and Inflammatory Bowel Disease. She has also been followed by a Rheumatologist for Polymyalgia Rehumatica as well as seronegative Rheumatoid Arthritis. The Rheumatologist also feels that she suffers from an autoimmune systemic disorder with generalized arthralgia and that she does have a long term disability and this is reflected in her notes which will accompany this letter. [Plaintiff] also has associated severe insomnia due to the symptoms of the above conditions. [Plaintiff] has multiple diagnoses that contribute to her being totally disabled.
>
> Since the last communication she has gotten worse and is unable to do her ADL's without assistance. We respectfully request that her disability claim be reinstated.

Tr. 390.

4 – OPINION AND ORDER

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014).

The ALJ provided Plaintiff's treatment history and summarized Plaintiff's allegations regarding her limitations. Tr. 33-38. The ALJ provided a boilerplate statement concluding Plaintiff's statements about her limitations were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 35. But merely reciting the medical record is not a sufficient method for rejecting a Plaintiff's subjective symptom testimony. *Trechler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014). "[T]he ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Here, the ALJ made no such findings with regard to Plaintiff's symptom testimony.

The ALJ apparently concluded that Plaintiff's symptoms were alleviated with medication. Tr. 36 (noting September 2015 treatment note indicating Plaintiff "did well on Prednisone" and January 2016 noted indicating "Prednisone helped with arthritis). But Dr. Johnson confirmed that, entirely consistent with Plaintiff's testimony, Plaintiff's medications produce side effects including lethargy, drowsiness, dizziness, and fatigue. Tr. 392. And Plaintiff's rheumatologist noted concerns of "steroid toxicity." Tr. 382.

The treatment record demonstrates that over the three-year period at issue, Plaintiff received some relief with medication but this relief came with severe side effects. For example,

5 – OPINION AND ORDER

in November 2017, Plaintiff's rheumatologist noted that while Lyrica "helped with pain," it "made her feel strange." Tr. 382. And even at this time, with some relief from pain, Plaintiff's left knee contained a "valgus deformity" and her writs were objectively swollen. Tr. 382. Two years earlier, Plaintiff's rheumatologist noted that although Prednisone provided some relief from arthritis, it "makes her wired." Tr. 345. And even though Plaintiff received some relief, her doctor noted Plaintiff "has a long term disability" and hoped that "[b]etter control of colitis may also help to control the arthritis better."[3] Tr. 345. Six months earlier, the rheumatologist noted, "Myofascial pain. Gabapentin helped with sleep and abdominal pain. Since it is making her dizzy, I will have her try [other medication]." Tr. 346. The record as a whole supports the fact that even after receiving some pain relief, Plaintiff's symptom testimony was (1) credible and (2) fully corroborated by her treating providers and their treatment notes.

      The ALJ also noted that although Plaintiff complained of pain in her shoulders, X-rays were normal. Tr. 34. And while Plaintiff complained of back and hip pain, July 2016 X-rays showed only "mild degenerative changes of the sacroiliac joints and hips" and September 2016 X-rays showed mild or minimal degenerative disc disease. Tr. 34. Although Plaintiff complained of "vague pelvic pain" the CT scan was normal. Tr. 33. Plaintiff's primary ailments, however, were irritable bowel syndrome and rheumatoid arthritis. It is unclear to the Court what objective findings in this case should be expected to show. As noted, Plaintiff's treating physicians, who viewed the imaging results, concluded Plaintiff's allegations of pain were credible.

      The ALJ also contrasted Plaintiff's alleged severe limitations with the results of the September 2016 comprehensive medical examination. The ALJ noted that the consultative examiner wrote that Plaintiff "had normal gait and balance and did not require the use of an

---

[3] The Court points to the rheumatologist's opinion that Plaintiff "has a long term disability" not to imply that the statement required the ALJ to find Plaintiff disabled, but instead to note Plaintiff's treating physician's found Plaintiff's symptom testimony to be credible.

6 – OPINION AND ORDER

assistive device for ambulation." Tr. 35. But one lone sentence, from one 30-minute examination, cannot trump the opinions of Plaintiff's treating providers who based their opinions on dozens of treating appointments over three years. The record demonstrates, as is common with one suffering from arthritis, that Plaintiff's condition waxed and waned. And Plaintiff's illness was a complex one, requiring several specialists who coordinated with the primary care physician. As noted by Dr. Johnson, Plaintiff "has multiple diagnoses that contribute to her being totally disabled." Tr. 390. In fact, in a treating note from the same month as Plaintiff's hearing, Dr. Johnson noted "She continues to have abdominal pain and cramping, multiple joint pains and swelling, back pain, nausea and insomnia." Tr. 391. That Plaintiff may have simply had a good day on the date chosen for her consultative examination does not allow the ALJ to ignore years of other treatment notes.

     Where, as here, there is no evidence of malingering, the ALJ may only reject the claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ failed to provide clear and convincing reasons for finding Plaintiff not credible as to the extent of her limitations. In short, the ALJ erred in pointing to an isolated sentence from one examination in contrasting Plaintiff's allegations against the medical record. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (error to point to isolated instances of improvement in rejecting a claimant's testimony).

     As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of

benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

This is a rare instance where remand for an award of benefits is appropriate. Plaintiff testified she suffered drowsiness from her medication. This, along with Plaintiff's chronic joint pain, required Plaintiff to nap for an hour or so every day and resulted in Plaintiff not being able to concentrate. Plaintiff also testified there were times when she required constant access to a restroom. These allegations were supported by Plaintiff's treating physicians.[4] The vocational expert testified that someone with these requirements would not be able to sustain employment. Tr. 72-74. Plaintiff is therefore disabled under the Act.

## CONCLUSION

The decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner for the immediate calculation and payment of benefits. IT IS SO ORDERED.

DATED this 30th day of March, 2021.

_____/s/ Michael J. McShane_____  
Michael McShane  
United States District Judge

---

[4] In contrast with the consultative examiner, who spent perhaps 30 minutes on one afternoon with Plaintiff, Plaintiff's treating providers based their opinions on over 20 treating appointments with Plaintiff over the course of three years. Again, while the opinions of Plaintiff's rheumatologist and primary care physician that Plaintiff was disabled are not controlling as to that issue, they are relevant in examining the credibility of Plaintiff's subjective testimony regarding her pain and limitations.

8 – OPINION AND ORDER